**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**
**CIVIL ACTION NO. 5:14-cv-00111-KSF**
*ELECTRONICALLY FILED*

-----------------------------------------------------------------------X
ROBERT B. MUNCY, JR., D.M.D.,                                  :
                                                               :
                          Plaintiff,                           :
                                                               :     **MEMORANDUM OF**
             v.                                                :     **LAW IN SUPPORT OF**
                                                               :     **MOTION TO DISMISS**
INTERCLOUD SYSTEMS, INC, and                                   :     **AMENDED COMPLAINT**
BILLY CAUDILL, and RUSSELL CORNETT,                            :
and DIGITAL COMM, INC.                                         :
                                                               :
                          Defendant.                           :
-----------------------------------------------------------------------X

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT .................................................................................................... 3

    I.    The Amended Complaint Fails To State
        Plausible And Particularized Claims Against InterCloud ................................ 3

        A.   Muncy's Claims Against InterCloud Are Implausible On Their Face ..................... 4

             1.   Muncy's Allegations Are Facially Insufficient To Establish That
                 InterCloud Conferred Apparent Authority On Caudill And Cornett ............. 4

             2.   As A Matter of Law, InterCloud Cannot Be Held Liable For The
                 Private Transaction Entered Into Between Caudill And Muncy .................... 7

        B.   Muncy's Fraud-Based Claims Are Not Pled With Sufficient Particularity ............. 8

    II.   The Court Lacks Personal Jurisdiction Over InterCloud ................................ 10

    III.  Muncy's Unjust Enrichment Claim Must Be Dismissed Because There
         Is No Allegation That InterCloud Was Enriched By The Alleged Transaction ............ 11

    IV.  Muncy's Civil Conspiracy Claim Fails For Multiple Reasons ...................... 11

CONCLUSION ................................................................................................. 13

i

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(s)**

*Asplund v. Selected Investments in Finance Equities, Inc.*,
    103 Cal. Rptr. 2d 34 (Cal. Ct. App. 2000) ..........................................................................5

*BancInsure, Inc. v. U.K. Bancorporation Inc.*,
    830 F. Supp. 2d 294 (E.D. Ky. 2011) ...............................................................................7

*CSX Transport, Inc. v. Recovery Express, Inc.*,
    415 F. Supp. 2d 6 (D. Mass. 2006) ....................................................................................5

*Chau v. First Federal Bank*,
    No. 5:10-cv-353-JMH, 2010 U.S. Dist. LEXIS 131155 (E.D. Ky. Dec. 9, 2010) ............12

*Conti v. Pneumatic Products Corp.*,
    977 F.2d 978 (6th Cir. 1992) .........................................................................................11

*Cowburn v. Leventis*,
    619 S.E.2d 437 (S.C. Ct. App. 2005).................................................................................5

*Doherty v. American Motors Corp.*,
    728 F.2d 334 (6th Cir. 1984) .........................................................................................11

*General America Life Insurance Co. v. AmSouth Bank*,
    100 F.3d 893 (11th Cir. 1996) ...........................................................................................5

*Grinnell v. Carbide & Carbon Chemicals Corp.*
    282 Mich. 509 (1937) .......................................................................................................6

*Innotext, Inc. v. Petra'Lex USA Inc.*,
    694 F.3d 581 (6th Cir. 2012) ........................................................................................5, 6

*Lak, Inc. v. Deer Creek Enterprises*,
    885 F.2d 1293 (6th Cir. 1989) .......................................................................................11

*Mayer v. Mylod*,
    988 F.2d 635 (6th Cir. 1993) ...........................................................................................9

*Radioshack Corp. v. ComSmart Inc.*,
    222 S.W.3d 256 (Ky. Ct. App. 2007) ...............................................................................9

*Sudamax Industria E Comercio De Cigaros, LTDA v. Buttes & Ashes, Inc.*,
    No. 1:05-CV-60-M, 2006 U.S. Dist. LEXIS 90231 (W.D. Ky. Dec. 8, 2006)..................12

**<u>CASES</u>**                                                                                        **<u>PAGE(s)</u>**

*United States Achievement Academy, LLC v. Pitney Bowes, Inc.*,
    458 F. Supp. 2d 389 (E.D. Ky. 2006) ...................................................................4

*Vandevelde v. Poppens*,
    552 F. Supp. 2d 662 (W.D. Ky. 2008) ..............................................................4

**<u>STATUTES</u>**

8 Del. C. § 158 ................................................................................................................10

Fed. R. Civ. P. Rule 9(b) ................................................................................................8

KRS 454210(2)(a)(1) ......................................................................................................10

KRS 454210(2)(a)(3) ......................................................................................................10

## PRELIMINARY STATEMENT

In a desperate attempt to keep InterCloud in this case, Muncy advances an argument that takes the doctrine of apparent authority to absurd extremes.

This action arises from a meeting at a Lexington restaurant between Muncy and the two individual defendants in this case, Caudill and Cornett, in October 2012.  There is no legitimate allegation that Caudill and Cornett transacted acted any business on InterCloud's behalf.  Instead, they allegedly told Muncy that an investment in InterCloud common stock would yield a "substantial profit" because the company would be undertaking an IPO in early 2013, and Muncy, in alleged (and illegal) reliance on this purported insider information, purchased 500,000 shares of InterCloud stock from Caudill for $50,000 (the "Alleged Transaction").  Having not realized the "substantial profit" that he allegedly was promised, Muncy now wants his money back.  But realizing that Caudill may be judgment proof, he frivolously has sued the proverbial deep pocket in what amounts to a blatant shakedown attempt.  So knowing full well that InterCloud had no involvement in his purely private transaction with Caudill, Muncy, in attempting to save his four fraud-based claims, attempts to construct an argument that InterCloud somehow conferred apparent authority on Caudill and Cornett such that the company is liable for their alleged misstatements.

Muncy's argument fails on several levels.  As an initial matter, SEC filings in the public record show that neither Caudill nor Cornett were agents of InterCloud at the time of the meeting. Moreover, Muncy's argument that InterCloud's mere provision of business cards to Caudill and Cornett while they were employed somehow conferred apparent authority on them to subsequently bind the company and render it liable for their misstatements flies in the face of both settled law and common sense.  The cases do not hold that a company's mere provision of

business cards to its agent by itself confers unlimited apparent authority in perpetuity. Rather, it is a question of context, as Muncy's own cases demonstrate. If the business cards were provided in a meeting concerning the company's business, and there exist other indicia that the agent is acting in his business capacity, then courts may find that apparent authority existed. But here, even if Caudill and Cornett had been InterCloud agents at the time (which they were not), and even if they had had authority to speak to investors about the company's prospects (there can be no allegation that they did), it is not as if this was an investor conference call. Muncy for obvious reasons did not allege in his Amended Complaint that during his private meeting in a Lexington diner, he genuinely believed that Caudill and Cornett were acting in an official capacity. His attempt to make that argument now is nothing short of shocking.

Based on the foregoing, Muncy's allegations fail the plausibility test imposed by *Iqbal* and *Twombly*. They also fail Rule 9(b)'s heightened pleading requirements because the alleged representations were not in fact false and in any event were the exact sort of "sales talk" that is not actionable under Kentucky law. And they fail the PSLRA's pleading requirements too, as Muncy does not bother to explain, much less in detail, how InterCloud acted with the requisite intent to defraud.

Finally, Muncy's two afterthought claims—for unjust enrichment and civil conspiracy— also fail as a matter of law. The Amended Complaint makes no effort to explain how InterCloud supposedly was "enriched" by Muncy's private purchase of its non-publicly traded stock from Caudill. Muncy's belated argument on opposition—that his purchase somehow "propped up" InterCloud's stock price—defies economic logic. The civil conspiracy claim also fails because a company as a matter of law cannot "conspire" with its agents. And in any event, the claim is time-barred under Kentucky's one-year statute of limitations.

For the reasons set forth herein and in InterCloud's moving papers, the Court should reject Muncy's frivolous shakedown attempt and dismiss the Amended Complaint accordingly.

## ARGUMENT

### I.     The Amended Complaint Fails To State Plausible And Particularized Claims Against InterCloud

Muncy's first four Causes of Action—for securities fraud, Blue Sky violations, common law fraud and negligent misrepresentation—all depend on the proposition that InterCloud is liable for Caudill's and Cornett's alleged misrepresentations.  Muncy does not outright admit as much, but the Amended Complaint does not contain a single allegation concerning what *InterCloud* did to mislead Muncy.   Instead, Muncy alleges that Caudill and Cornett misrepresented the merits of an investment in InterCloud stock, inducing him to purchase shares from Caudill.  And now, realizing his pleading failures on opposition, Muncy belatedly argues that he intrinsically pleads that InterCloud conferred apparent authority upon Caudill and Cornett and that all of their interactions with him therefore were on InterCloud's behalf (even though the Amended Complaint never says so).   This convenient re-characterization of his allegations allows Muncy to argue that the serial references to "defendants" in the Amended Complaint are meant to "capture all of the parties within the agency relationship."  (Opp. at 14.)

However, even taking Muncy's newfound arguments at face value, they still fail to save his claims from dismissal on the pleadings.  His fraud-based claims are subject not only to the *Iqbal/Twombly* plausibility requirements, but also the particularity requirements of Rule 9(b) and the specificity requirements of the PSLRA.  Muncy's allegations fail under all three pleading standards for the reasons set forth below.

A.      **Muncy's Claims Against InterCloud Are Implausible On Their Face**

1.      **Muncy's Allegations Are Facially Insufficient To Establish That InterCloud Conferred Apparent Authority On Caudill And Cornett**

As an initial matter, it is undisputed that Caudill and Cornett were not agents of InterCloud at the time of the Alleged Transaction, as public SEC filings show that Caudill had stepped down as President in September 2012, and Digital Comm. also ceased being a subsidiary of InterCloud.  (*See* Declaration of Eric D. Dowell, dated July 10, 2014 ("Dowell Decl."), **Exhibit A**, at 49, 54; **Exhibit G**, at 4.)  So they had no actual authority to act on InterCloud's behalf in any capacity.  Muncy ignores this fact in his opposition.  And although Muncy retreats to an apparent authority argument now, the allegations in his Amended Complaint do not support that argument.

An apparent agent is "one whom the principal, either intentionally or by want or ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him."  *Vandevelde v. Poppens*, 552 F. Supp. 2d 662, 666 (W.D. Ky. 2008) (citation & quotations omitted).  In other words, "the acts or statements of the principal must be looked to for the requisite foundation and not to those of the agent."  *United States Achievement Acad., LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 396 (E.D. Ky. 2006).

Here, the sole allegation in the Amended Complaint concerning *an action taken by InterCloud* is that it mailed Muncy a stock certificate <u>after</u> he bought stock from Caudill.  Perhaps recognizing that such an allegation is legally insufficient, Muncy now advances the absurd argument that InterCloud's provision of business cards to Caudill and Cornett while they still were employees subsequently conferred apparent authority upon them to opine about InterCloud's stock in their private, illegal conversations with Muncy (of which InterCloud is not alleged to have had any knowledge).  The Court should reject such unsupportable arguments as

4

counterintuitive.  But even if one engages Muncy's newfound, unsupported, facially absurd argument, it still fails as a matter of law.

Contrary to Muncy's argument, the cases do <u>not</u> hold that merely providing an agent with business cards with the company name or logo, or taking similar actions, confers apparent authority.  *See, e.g., General Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 898 (11th Cir. 1996) (no evidence of apparent authority despite stationary and business cards containing name of alleged principal and identifying alleged agent as "general agent"); *CSX Transp., Inc. v. Recovery Express, Inc.*, 415 F. Supp. 2d 6, 11–12 (D. Mass. 2006) ("The Court could find no cases where, for example, giving someone a business card with the company name or logo, access to a company car, or company stationery, by themselves, created sufficient indicia of apparent authority."); *Asplund v. Selected Invs. in Fin. Equities, Inc.,* 103 Cal. Rptr. 2d 34, 48–49 (Cal. Ct. App. 2000) (issuance of business card and display of a plaque insufficient to create apparent authority); *Cowburn v. Leventis,* 619 S.E.2d 437, 448 (S.C. Ct. App. 2005) (supplying forms and business cards insufficient to create apparent authority).

Muncy pretends as if the Sixth Circuit held otherwise, but in doing so he grossly misrepresents the holding in *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581 (6th Cir. 2012). That case involved an alleged oral contract between a sales representative (Innotext) and the company that it represented (Petra'Lex).  *Id.* at 584–88.  At a meeting with a potential buyer of Petra'Lex goods, Petra'Lex's principal (Sadosky) handed out a business card showing that he was the President of Petra'Lex USA, and then at a following lunch he allegedly accepted the Innotext principal's (Stafford) offer to represent the Petra'Lex companies in the U.S. on a commission basis.  *Id.*  In defending against the alleged oral contract that Stafford relied on in procuring it business, Petra'Lex USA argued that Sadosky's handing out the business card at the

meeting did not establish that he *continued* to act as *its* agent at the subsequent lunch.  *Id.* at 589–90.  The court justifiably rejected this argument, considering the full set of circumstances and placing itself in Stafford's shoes.  It recognized that "Sadosky's entire trip was for business, the parties planned to have a meeting *and* lunch, and the parties continued to talk business over lunch."  *Id.* at 590 (emphasis original).  Thus, "after Sadosky handed out his Petra'Lex USA business card, Stafford had no reason to believe that Sadosky stopped acting as an agent of Petra'Lex USA."  *Id.*  "In addition, it would be natural for anyone to assume that Sadosky was always acting as the agent of Petra'Lex USA because Stafford and Sadosky were there to talk about sales and Petra'Lex USA was the United States sales arm of the foreign factories."  *Id.*

In short, the business card at issue in *Innotext* was considered *in context* with regard to what Petra'Lex USA did to hold Sadosky out as its agent.  Here, by contrast, there is no allegation that InterCloud confirmed the status of Caudill and Cornett as its representatives or sent them to Kentucky to conduct company business.  Since InterCloud did not do anything to hold out Caudill and Cornett as its agents, the fact that Caudill and Cornett may have given their outdated business cards to Muncy when they met at a Lexington restaurant and allegedly discussed a private stock transaction is indicative of nothing.  The further fact that, during that meeting, Caudill and Cornett allegedly violated federal securities law by providing inside information to Muncy concerning InterCloud, and Muncy in turn violated federal securities law in acting on that insider information and purchasing InterCloud stock, when taken together, actually undermines the argument that Caudill and Cornett were working at that time as anyone's agent.  Were it otherwise, any former executive who retained his business cards could bind a

6

company and/or render it liable through his private words and actions.  This simply is not the law.[1]

**2.**      **As A Matter Of Law, InterCloud Cannot Be Held Liable For The Private Transaction Entered Into Between Caudill And Muncy**

InterCloud explained in its moving papers why it was not responsible for any aspect of the Alleged Transaction even pretending that Caudill and Cornett were its agents in October 2012, because a principal cannot be held accountable for the private transactions entered into between its agent and a third party that are adverse to the interests of the principal.  *See, e.g., BancInsure, Inc. v. U.K. Bancorporation Inc.*, 830 F. Supp. 2d 294, 302–304 (E.D. Ky. 2011).  Here, the Alleged Transaction certainly was private, and it was adverse to InterCloud's interests if Caudill and Cornett truly conveyed inside information to Muncy.

Muncy's response that an exception to this rule exists "when the corporation participates in the transaction" is simply wrong.  (Opp. Br. at 14.)  This supposed "participation" exception is not among the three recognized by Kentucky courts.  Those three finite exceptions instead exist: "(1) where the interested officer is the sole representative of two corporations; (2) where the corporation benefits by the transaction; and (3) where the interested agent acts for the principal, instead of dealing with him, in which case the presumption of communication obtains." *BancInsure, Inc.*, 830 F. Supp. 2d at 302-03 (citation & quotations omitted).

Here, there is no allegation that Caudill or Cornett were sole actors for two corporations, no allegation that InterCloud benefitted from Muncy's purchase of its stock[2] and no allegation

---

[1] *Grinnell v. Carbide & Carbon Chems. Corp.* is similarly unhelpful to Muncy.  That court held that the defendant company was liable for the negligence of its salesman in installing a "pyrofax" stove system on plaintiff's yacht that ultimately exploded.  282 Mich. 509 (1937).  The salesman's provision of a business card indicating that he represented the company was just one element that the court relied on in finding that apparent authority existed. More importantly, the salesman there still was employed by the company and was in the business of promoting and selling pyrofax, and the company itself furnished the gas to the plaintiff.  *Id.* at 525–526.  Here, Caudill and Cornett were not InterCloud's agents and were not "in the business" of selling company stock, and the stock sold to Muncy came from Caudill's (actually his wife's) private inventory rather than directly from InterCloud.

7

that Caudill and Cornett were "acting for" InterCloud.   Moreover, even if InterCloud's "participation" in the Alleged Transaction was enough to overcome the adverse interest exception, Muncy's allegations fail to establish such "participation."   Muncy points first to the Subscription Agreement, but fails to acknowledge that it was provided by Caudill rather than InterCloud.   Muncy also ignores that the last page of the Subscription Agreement states: "Accepted by the Company this 24th Day of October, of ~~2011~~ 2012.  Digital Comm Inc., a division of [InterCloud]."  He does not deny that either he or Caudill manually crossed out "2011" and wrote in "2012" by hand, nor that Digital Comm. no longer was a "division" of InterCloud by October 2012.  That Caudill provided Muncy with an old document containing form language that, at the time of the Alleged Transaction, no longer was accurate cannot establish InterCloud's knowing "participation" in the Alleged Transaction under any definition of the term.  Moreover, InterCloud's simple mailing of a stock certificate to Muncy *after* he purchased stock does not magically and retroactively establish InterCloud's "participation."

In short, where this case concerns a private transaction that per Muncy's allegations was adverse to InterCloud's interests, InterCloud cannot be held liable for Caudill's and Cornett's alleged misrepresentations absent special circumstances that are not present here.

**B.      Muncy's Fraud-Based Claims Are Not Pled With Sufficient Particularity**

InterCloud previously argued that Muncy failed to meet Rule 9(b)'s heightened pleading standard because:  (1) Caudill's and Cornett's alleged statements were not false when made (because InterCloud in fact completed its IPO in 2013); (2) the alleged misrepresentation to Muncy that he would "realize a substantial profit"  was the exact type of prediction/statement of opinion that is not actionable under Kentucky law; and (3) there is no allegation in the Amended

---

[2] Muncy perfunctorily states in his opposition that InterCloud "benefited" from Muncy's purchase of the company's stock (Opp. at 15), but there is no allegation stating as such in the Amended Complaint, and even if there were, the allegation would be facially implausible.

Complaint, much less a particularized one, concerning InterCloud's intent to defraud.  Muncy's arguments in opposition fall flat.

First, Muncy responds that the alleged IPO representation was false because GGHO "already was a publicly traded company" in October 2012, but this is just wrong and is based on a misunderstanding of the nature of an IPO.  In particular, Black's defines an IPO as a company's "first public sale of stock; the first offering of an issuer's equity securities to the public through a registration statement."  Black's Law Dictionary, 9th ed.  Here, documents in the public record show that while GGHO was quoted on the OTCBB in 2012, it was not yet a nationally-listed, publicly traded stock.  (*See* Dowell Decl., **Exhibit A**, at 22; **Exhibit C**, at 15).  InterCloud (GGHO's successor) completed its IPO on the NASDAQ in 2013, just as Caudill and Cornett allegedly promised it would.  (*See* Dowell Decl., **Exhibit E**, at 32.)

Second, Muncy misleadingly argues that statements reflecting the speaker's opinion are actionable under Section 10(b) if the speaker "does not believe the opinion and the opinion is not factually well-grounded."  *See, e.g. Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993) (motion to dismiss denied where corporation stated that present value of loans in bank's portfolio were fairly reflected on balance sheet and that its share buyback was good investment because non-performing loans did not warrant decline in share price).  While this is an accurate statement of law, Muncy's allegations do not fit.  Instead, Muncy alleges that Caudill and Cornett told him that he would "realize a substantial profit" by investing in InterCloud before it completed its IPO in 2013.  This is the exact sort of predictive "puffing" and "sales talk" that is <u>not</u> an actionable misrepresentation under Kentucky law.  *See, e.g., Radioshack Corp. v. ComSmart Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007) ("[A]n expression of an opinion as to future profits is not

actionable as fraud [under Kentucky law], at least where the subject of the opinion is not susceptible of definite knowledge.").

Third, Muncy argues that the allegations in the Amended Complaint "clearly indicates [sic] that Interlcoud [sic] intended for" Caudill and Cornett to get Muncy "to invest a large sum of money and pay more than the Company's stock was worth based on misrepresentations." (Opp. at 19.)  But Muncy tellingly fails to cite any specific allegations in support of his argument, for the simple reason that none exist.  Nothing in the Amended Complaint speaks to InterCloud's supposed intent to defraud Muncy, much less with the particularity required by Rule 9(b) and the specificity required by the PSLRA.[3]

Muncy's fraud-based claims fail for all of the reasons detailed above.

## II.   The Court Lacks Personal Jurisdiction Over InterCloud

Muncy argues that the Court has personal jurisdiction over InterCloud pursuant to KRS 454210(2)(a)(1) and (3) because it supposedly transacted business in Kentucky and caused tortious injury by an act or omission in Kentucky.  Neither proposition withstands scrutiny.

Muncy does not credibly dispute the statement in InterCloud's supporting affidavit confirming that it never has transacted any business in Kentucky.  He instead notes that InterCloud issued securities to (unnamed) Kentucky residents, "sent" its alleged agents to convince him to invest in company stock, and then "finalized" the transaction by mechanically sending a stock certificate confirming with the requirements of 8 Del. C. § 158 to Muncy's home address.  But these allegations are facially inadequate.  Muncy's failure to adequately plead

---

[3] Muncy emptily argues that his Amended Complaint passes the PSLRA's standard for securities fraud because it supposedly alleges facts sufficient to give rise to "a strong inference of recklessness" on InterCloud's part.  (Opp. at 16.)  But again, this argument is dependent on the losing proposition that InterCloud is liable for Caudill's and Cornett's words under an apparent agency theory.  Moreover, even if that theory had any merit, and InterCloud's provision of business cards to Caudill and Cornett that they eventually provided to Muncy equated to conferring apparent authority upon them, nothing in the Amended Complaint even suggests that merely providing those business cards somehow was "reckless" on InterCloud's part.

InterCloud's responsibility for Caudill's and Cornett's purported misstatements is addressed above, and the case law is clear that simply mailing documents into Kentucky does not constitute a "substantial relationship" with the Commonwealth such that haling InterCloud into a foreign jurisdiction comports with due process.  *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989); *see also Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 982 (6th Cir. 1992).[4] Moreover, Muncy's argument that InterCloud caused tortious injury by an act or omission in Kentucky is completely dependent upon, and fails alongside, the doomed proposition that Caudill and Cornett were acting as its agents.

## III.   Muncy's Unjust Enrichment Claim Must Be Dismissed Because There Is No Allegation That InterCloud Was Enriched By The Alleged Transaction

Muncy's Amended Complaint does not allege that InterCloud was enriched by Muncy's purchase of company stock from Caudill.  In yet another attempt to correct his deficient pleading, Muncy now emptily argues that the stock purchase purportedly benefited InterCloud by "propping up" its stock price and compensating its agents.  Neither argument passes the straight face test.  The first proposition is completely unsupported and is belied by the fact that InterCloud stock was not publicly traded at the time of the Alleged Transaction.  (How Muncy's private purchase of InterCloud's non-publicly traded stock had any broader market effect on the price of shares remains an economic mystery.)  And Muncy similarly fails to explain, because he cannot, how his payment to Caudill somehow enriched InterCloud.

## IV.   Muncy's Civil Conspiracy Claim Fails For Multiple Reasons

Finally, Muncy's civil conspiracy claim is nothing short of bizarre.  The claim only makes logical sense if one assumes that Caudill and Cornett were InterCloud's agents and were

---

[4] Muncy's attempt to distinguish these cases fails for reasons previously stated.  His argument in this regard boils down to the ridiculous proposition that InterCloud "sent" Caudill and Cornett to Kentucky to meet with him and consummate a private sale of stock between two individuals.  But there is no allegation in the Amended Complaint stating as such, nor could there be.

in cahoots with the company.   But in this alternate reality, the claim would fail because an employee cannot "conspire" with his employer.   *See, e.g., Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984); *Chau v. First Fed. Bank*, No. 5:10-cv-353-JMH, 2010 U.S. Dist. LEXIS 131155, at *9 (E.D. Ky. Dec. 9, 2010); *Sudamax Industria E Comercio De Cigaros, LTDA v. Buttes & Ashes, Inc.*, No. 1:05-CV-60-M, 2006 U.S. Dist. LEXIS 90231, at *12 (W.D. Ky. Dec. 8, 2006).   And, of course, the truth is that Caudill and Cornett were not InterCloud's agents, which exposes the conspiracy claim as patently ludicrous.

In any event, the conspiracy claim is time-barred.   Muncy acknowledges that the applicable statute of limitations is one year but pretends that InterCloud committed acts in furtherance of the alleged conspiracy into 2013.   However, Muncy's vague reference to "lulling letters" supposedly sent by InterCloud and touting of its stock to unnamed "other" investors is not connected to any allegations in the Amended Complaint, much less any allegations detailed enough to sufficiently put InterCloud on notice of his claim.   Muncy's clumsy attempt to plug his claims into completely unrelated, pending class action securities fraud cases should be recognized for the ploy that it is and rejected.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in its moving papers, InterCloud respectfully requests that the Court grant this motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: August 20, 2014

                                    Respectfully submitted,

                                    <u>s/ Kenneth T. Kline</u>
Culver Halliday
Stoll Keenon Ogden PLLC
2000 PNC Plaza
500 West Jefferson St.
Louisville, Kentucky 40202
Phone: (502) 333-6000
Facsimile: (502) 333-6099
culver.halliday@skofirm.com

*and*

K. Timothy Kline
Stoll Keenon Ogden PLLC
101 E. 2nd St., Suite 200
Owensboro, Kentucky 42303
Phone:  (270) 926-3000
Facsimile:  (270) 685-5502
timothy.kline@skofirm.com

and

Eric D. Dowell
Scott C. Ross
Pryor Cashman LLP
7 Times Square
New York, New York 10036
Phone:  (212) 421-4100
Facsimile:  (212) 326-0806

*Attorneys for Defendant InterCloud Systems Inc.*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed with the Court's ECF system on August 20, 2014.

s/ Kenneth T. Kline
*Attorneys for Defendant Intercloud Systems, Inc.*

14