UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 14-111-DLB

ROBERT B. MUNCY, JR.                                                    PLAINTIFF

vs.                        **MEMORANDUM OPINION AND ORDER**

INTERCLOUD SYSTEMS, INC., et al.                          DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Robert Muncy alleges that Defendant InterCloud Systems, Inc. violated federal and state securities laws when Defendant Billy Caudill and former-Defendant Russell Cornett[1] sold him InterCloud stock.  InterCloud contends that it is not liable for Caudill's and Cornett's actions and has moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  This matter is fully briefed and ripe for review.  (Docs. ## 20, 23, 27).  For the following reasons, the Court will **deny** InterCloud's Rule 12(b)(2) motion, and **grant in part** and **deny in part** its Rule 12(b)(6) motion.

## I.    Factual and Procedural Background

The following facts are taken either from the Plaintiff's Amended Complaint or from relevant public records and corporate filings.  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001) ("[T]his Court may consider the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not

---

[1]    All claims against Cornett were dismissed by agreement.  (Doc. # 19).

attached, without converting the [Rule 12(b)(6)] motion into one for summary judgment.").

In October 2012, Plaintiff Robert Muncy, D.M.D., met with Defendant Billy Caudill and former-Defendant Russell Cornett at a restaurant in Lexington, KY.  (Doc. # 11 at ¶ 12).  Caudill is the former President of Genesis Group Holdings Company, which changed its name to InterCloud in January 2013.[2]  (Doc. # 20 at Exs. A, D).  InterCloud is a Delaware Corporation that engages in internet data storage and has its principal office in New Jersey.  (Doc. # 11 at ¶ 3).  Caudill joined Genesis in 2010 when it acquired Defendant Digital Comm, Inc.  (Doc. # 20, Ex. B at 1).  At all relevant times, Caudill has served as Digital's chief executive officer and Cornett as Digital's Vice President of Public Relations.  (Doc. # 11 at ¶¶ 5, 6).  In September 2012, approximately one month before the meeting in Lexington, Genesis terminated Caudill and sold a majority of its Digital shares.  (Doc. # 20, Exs. A, B).

At the October 2012 meeting, Caudill and Cornett informed Muncy of their positions at Digital.  (Doc. # 11 at ¶ 12).  They provided Muncy with business cards that corroborated their titles and that stated Digital was a "Genesis Group Holdings Company."  (*Id.*).  According to Muncy, Caudill and Cornett represented that they were authorized to speak on Genesis' behalf.  (*Id.*)  The pair told Muncy that they were giving him an opportunity to invest in Genesis before it undertook an initial public offering (IPO) and that Muncy would "realize a substantial profit."  (*Id.* at ¶ 13).  Muncy contends that these statements were false and asserts that Caudill and Cornett failed to advise him of material facts necessary

---

[2]  During this section of the opinion, the Court will use both Genesis and InterCloud, staying true to the time period when the events transpired and the company name that appears on the cited documents.  When the Court proceeds to the analysis, it will use only InterCloud.

to make their statements not misleading.  (*Id.* at ¶¶ 14, 16).

On October 24, 2012, Muncy signed a Subscription Agreement and Confidential Investor Questionnaire.  (*Id.*).  The agreement was also signed by Caudill and stated it was accepted by Digital, "a division of Genesis."  (*Id.* at ¶ 18).  Muncy purchased 500,000 shares of Genesis stock at $.10 per share (*Id.* at ¶ 17), but does not plead to whom he made the $50,000 payment.  Genesis mailed a stock certificate to Muncy's home in Lexington, KY, which evidenced his ownership of 500,000 shares of Genesis stock.  (*Id.* at ¶ 20).  In October 2013, after Genesis changed its name to InterCloud, it underwent an Initial Public Offering (IPO) on the NASDAQ.  (Doc. # 20 at Ex. E).

Muncy has attempted to have InterCloud rescind his stock purchase to no avail. (Doc. # 11 at ¶ 24).  He now brings suit against Intercloud alleging violations of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Kentucky's Blue Sky Laws, Ky. Rev. Stat. §§ 292.320, 292.330, 292.340, 292.480.  Additionally, he asserts state law claims for fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy.

## II.   Analysis

### A.   Standard of Review

Different standards of review and burdens of proof apply to the individual claims and grounds for dismissal, differences that are dispositive.

When a defendant brings a Rule 12(b)(2) motion, the burden is on the plaintiff to establish personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff cannot meet his burden by simply pointing to the pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Id.* A court views the pleadings and affidavits in the light most favorable to the plaintiff and

"does not weight the controverting assertions of the party seeking dismissal." *Id.* at 1459. When the court has not conducted an evidentiary hearing,[3] a plaintiff need only make a *prima facie* showing of personal jurisdiction, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002), making his burden "relatively slight," *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).   Surviving a Rule 12(b)(2) motion does not relieve a plaintiff of his burden to prove jurisdiction by a preponderance of the evidence, should the defendant later raise the issue.  *Serras v. First Tennesse Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

On a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and determines whether the plaintiff can prove any set of facts that would entitle him to relief.  *Bovee*, 272 F.3d at 360.   To survive a motion to dismiss, a complaint must contain more than "a formulaic recitation of a cause of action's elements"; rather, there must be "enough facts to state a claim to relief that is plausible," i.e. "above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

The fraud based claims are subject to Fed. R. Civ. P. 9(b). This rule requires a plaintiff to: "(1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) plead when and where the statements were made; and (4) explain what made the statements fraudulent."  *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).  Under Rule 9(b), "conditions of a person's mind may be alleged generally," but a plaintiff must plead facts that "make the state-of-mind allegation 'plausible

---

[3] Neither party has requested an evidentiary hearing.

4

on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)). Rule 9(b)'s standard applies to Muncy's § 10(b), Ky. Rev. Stat. § 292.320, common-law fraud, and negligent misrepresentation claims.  *Id.* at 248.

Muncy's § 10(b) and Ky. Rev. Stat. § 292.320 claims are also subject to the Private Securities Litigation Reform Act (PSLRA), which requires that he (1) "specify each statement alleged to have been misleading" along with "the reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)-(2).

## B.    Muncy has made a plausible showing of apparent authority

A threshold issue touches upon all others: whether it is plausible that Caudill and Cornett acted with InterCloud's apparent authority.  InterCloud moves to dismiss all claims under the theory that it is not responsible for any of the acts alleged in the complaint.  (Doc. # 20 at 9, 11).  InterCloud argues that Caudill and Cornett were not its agents at the October 2012 meeting because, a month prior, it terminated Caudill and sold a majority of its Digital shares.  (*Id.* at 11, 12).  In the alternative, InterCloud argues that Caudill's and Cornett's actions cannot be imputed to it because the stock sale involved a purely private transaction.  (*Id.* at 13).  Muncy's response is that Caudill and Cornett acted under InterCloud's apparent authority.

Because the events took place in Kentucky, the Court applies Kentucky agency law. *See Belmont v. MB Inv. Partners, Inc*, 708 F.3d 470, 494 (3d Cir. 2013) (stating that "[a]lthough the Investors' underlying securities fraud claims are governed by federal law, the issue of imputation is determined by state law (citing *O'Melveny & Myers v. Fed.*

5

*Deposit Ins. Corp.*, 512 U.S. 79, 84–85 (1994))).  An apparent agent "is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934).  Importantly, there does not need to be "direct contact between the principal and the third party asserting apparent authority." *Dierg v. Lees Leisure Industries, Ltd.*, No. 11-125-DLB-JGW, 2012 WL 669968, at *6 (citing *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 58 (Ky. 2008) (Lambert, C.J., dissenting)).

The Kentucky Supreme Court recently gave the following definition of apparent authority:

> Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.

*Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 499 (Ky. 2014) (citing Restatement (Third) of Agency § 3.03 (2006)).  Accordingly, the Court must determine whether it is plausible that (1) InterCloud represented that Caudill and Cornett had the authority to act on its behalf; (2) Muncy reasonably believed Caudill and Cornett had such authority, and (3) Muncy's belief is traceable to InterCloud's representations.  *See id.* at 500.  Although "apparent authority is a legal conclusion, its elements are chiefly factual matters . . . for the jury." *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421, 426 n. 1 (6th Cir. 1998).

Caudill and Cornett told Muncy that they were InterCloud's agents, (Doc. # 11 at ¶ 12), but that representation is not relevant because it was not made by InterCloud.  Caudill

6

and Cornett also, however, handed Muncy business cards that indicated they were executives of an InterCloud company, and provided Muncy with a subscription agreement that stated it was accepted by InterCloud. (Doc. # 11 at ¶¶ 12, 18). There is a reasonable inference that InterCloud prepared the business cards and subscription agreement. Therefore, these two items are relevant to the apparent authority inquiry. *See Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012) (stating that "letterheads and business cards can be used to evidence an [apparent] agency relationship.").

Viewing the facts in the light most favorable to Muncy, it is plausible that he could establish that Caudill and Cornett had apparent authority to act for InterCloud. Caudill's and Cornett's possession of the business cards and subscription agreement could be construed as a manifestation by InterCloud that they had authority to act on its behalf. Because Caudill's and Cornett's business cards represented that they were executives, it was reasonable for Muncy to believe that they had InterCloud's blessing to sell the stock and make representations about the company. There is no indication that Muncy had actual knowledge that InterCloud had recently terminated Caudill and sold a majority of its Digital shares.

InterCloud argues that handing out business cards with a company's name is insufficient to establish apparent authority. (Doc. # 27 at 9). While the cases InterCloud cites support this argument (*id.* at 5), they were all decided at the summary judgment or post-trial stage, with discovery underway or complete, and the party asserting apparent authority therefore facing a higher burden. Moreover, the business cards are not the only evidence of apparent authority: there is also the subscription agreement, and the fact that the business cards indicated Caudill was the president and chief executive officer of an

7

"[InterCloud] company."  *See* Restatement of Agency § 3.03 comments b and e(3) ("A principal may also make a manifestation by placing an agent in a defined position in an organization"; "[t]he apparent authority of a president or chief executive officer encompasses transactions falling within the ordinary course of the corporation's business.").  Collectively, these facts are sufficient for Muncy's apparent authority theory to survive a motion to dismiss, thereby allowing him to proceed with discovery on the issue.

InterCloud argues in the alternative that, even if Caudill and Cornett had apparent authority, it is not responsible because "a principal cannot be held accountable for the private transactions entered into between its agent and a third party."  (Doc. # 20 at 13).  In support, InterCloud relies on *BancInsure, Inc. v. U.K. Bancoporation Inc./United Kentucky Bank of Pendleton County, Inc.*, 830 F.Supp.2d 294, 302 (E.D. Ky. 2011).  There, this Court cited the Kentucky Supreme Court's holding that under the "adverse interest" rule, "imputation does not apply 'when the transaction relates to personal matters of the agent . . . and where his interests are adverse to those of his principal . . . .'" *Id.* (quoting *Illinois Cent. R. Co. v. Fontaine*, 289 S.W. 263, 267 (Ky. 1927)).  Three exceptions apply to this rule: "(1) [w]here the interested officer is the sole representative of two corporations; (2) where the corporation benefits by the transaction; and (3) where the interested agent acts for the principal, instead of dealing with him, in which case the presumption of communication obtains."  *Id.* at 302-03 (citing *Ohio Valley Banking & Trust Co. v. Citizens' Nat'l Bank*, 191 S.W. 433, 438 (1917) (citations omitted)).  Whether the adverse interest rule or any of its exceptions apply is a question of fact; in other words, the Court cannot determine from the pleadings that Caudill's and Cornett's "interests are adverse to those of [InterCloud]."  *Id.* at 302.

8

Finally, InterCloud argues that there can be no apparent authority because Muncy should have known, based on public documents, that InterCloud recently terminated Caudill and sold off a majority of its Digital shares.  (Doc. # 20 at 12).  The Form 10-K that disclosed Muncy's termination was filed six months *after* the Lexington meeting; therefore, that information cannot be imputed to Muncy.  Meanwhile the Form 8-K, which discussed the Digital spinoff, was filed just a few weeks before the Lexington meeting and is silent as to Caudill's status at the company.  Based on when the Form 8-K was filed and the limited information it contained, that document is insufficient to defeat Muncy's apparent authority argument at this preliminary stage of the case.

**C.    Muncy has made a *prima facie* case of personal jurisdiction**

Personal jurisdiction must be proper both under the forum state's long-arm statute and federal due process.  *Aristech Chemical Intern. Ltd.*, *v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).  The Kentucky Supreme Court recently overturned prior case law holding that the state's long-arm statute (Ky. Rev. Stat. § 454.210) reached the outer limits of due process.  *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) ("[T]he proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process.  First, review must proceed under KRS 454.210 . . . [then] a second step of analysis must be taken to determine if exercising personal jurisdiction . . . offends [a defendant's] federal due process rights.").  The Court will therefore determine if personal jurisdiction is proper under Kentucy's long-arm statute and then conduct a due process analysis.

### 1.   Kentucky's long-arm statute

Under Ky. Rev. Stat. § 454.210(2)(a)(1), a Kentucky "court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person [t]ransacting any business in this Commonwealth." The "arising from" requirement is satisfied "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Caesars Riverboat Casino, LLC*, 336 S.W.3d at 58–59.

Having concluded that Caudill's and Cornett's actions could be imputed to InterCloud, it follows *a fortiori* that InterCloud has transacted business in Kentucky. Caudill and Cornett traveled to the Commonwealth, met Muncy (a Kentucky resident) at a Lexington restaurant, and, bearing InterCloud business cards and an InterCloud subscription agreement, sold Muncy InterCloud stock. After Muncy purchased the shares, InterCloud mailed a stock certificate to his Kentucky home. These facts are sufficient to make out a *prima facie* case that InterCloud has transacted business in Kentucky.

InterCloud argues that it has never transacted business in Kentucky for purposes of personal jurisdiction. It cites *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978 (6th Cir. 1992) and *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989), in support. However, these cases rest on different facts. In *Conti*, mailing documents to the forum state was insufficient to establish personal jurisdiction because "substantially all the contacts" occurred outside the forum state. 977 F.2d at 982. And in *Lak*, the defendant "never sent its representatives into the forum state." 885 F.2d at 1302. Here, Muncy alleges that InterCloud sent Caudill and Cornett to Kentucky to sell him stock. Accepting

that allegation as true, the Court concludes that InterCloud has transacted business in Kentucky.

Muncy's claims also arise from InterCloud transacting business in Kentucky.  His claims are based on allegedly fraudulent statements and omissions Caudill and Cornett made at the same meeting that establishes personal jurisdiction under Ky. Rev. Stat. § 454.210(2)(a)(1).  The Court now turns to whether personal jurisdiction is permitted under federal due process.

### 2.    Due process

Muncy asserts that InterCloud is subject to specific jurisdiction.   A specific jurisdiction analysis involves a three-part test.  First, Intercloud must have purposefully availed itself of the privilege of acting in Kentucky or causing a consequence there. *Aristech Chemical Intern. Ltd.*, 138 F.3d at 628.  Second, the cause of action must arise from Intercloud's activities in Kentucky.  *Id.*  Third, Intercloud's acts must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over Intercloud reasonable.  *Id.*

### a.    Purposeful availment

Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks and citation omitted).  It is present when a defendant creates a "substanial connection" with the forum state such that he "should reasonably anticipate being haled into court there."   *Id.* at 474-75 (citations omitted).

11

InterCloud argues that personal jurisdiction is not proper because it has never transacted business in Kentucky, an argument rejected herein. In support of personal jurisdiction, Muncy attaches Caudill's and Cornett's business cards, the subscription agreement, and the stock certificate. (Doc. # 23 at Exs. A,B,C). Based on this evidence, and under the slight burden imposed by Rule 12(b)(2), the Court accepts as true Muncy's allegation that InterCloud "sent [Caudill and Cornett] into . . . Kentucky." (Doc. # 23 at 11). As a result, InterCloud's conduct establishes a *prima facie* case that it purposefully availed itself of the privilege of acting in the Commonwealth.

### b.   Arising out of

The "arising out of" prong requires only "that the cause of action . . . have a substantial connection with the defendant's in-state activities." *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 n. 27 (6th Cir. 1968). In other words, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Id.* at n. 29. The operative facts of this controversy – Caudill and Cornett's allegedly fraudulent statements – all occurred in Kentucky. Thus, the arising out of requirement is met.

### c.   Reasonableness

If the first two factors are met, there is an inference that the third factor is satisfied. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996). The factors relevant to the reasonableness inquiry include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (citations omitted).

12

InterCloud has not argued that it would be unreasonable for this Court to exercise *in personam* jurisdiction. Although InterCloud would have to travel, it is a domestic corporation. Muncy is seeking relief from injury, and Kentucky has an interest in providing him a forum. There is no indication that the interstate judicial system would be impacted. Thus, this is not the "unusual case" where the exercise of personal jurisdiction would be unreasonable. *Theunissen*, 935 F.2d 1461. Having found that Muncy has made a *prima facie* showing of personal jurisdiction, the Court will now address the merits of InterCloud's Rule 12(b)(6) motion.

**D.    Section 10(b) and Ky. Rev. Stat. § 292.320[4]**

**1.    Applicable law**

To succeed on a § 10(b) and Rule 10b-5 claim, a plaintiff "must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury."[5] *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).

---

[4] Because Ky. Rev. Stat. § 292.320 is "virtually identical" to § 10(b), the Sixth Circuit has held that their elements are the same and that the PSLRA applies to both. *Republic Bank & Trust Co.*, 683 F.3d at 261. Accordingly, the Court's analysis here will suffice to adjudicate both claims.

[5] Specifically, Section 10(b) forbids "the use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).
    Meanwhile, Rule 10b–5, promulgated by the SEC, makes it unlawful:
         (a) To employ any device, scheme, or artifice to defraud,
         (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . .not misleading, or
         (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

There are six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014) (citation omitted).  As discussed *supra*, § 10(b) is also subject to the heightened standards imposed by Fed. R. Civ. P. 9(b) and the PSLRA.  *Id.* at 470.

### 2.    Muncy's allegations

Muncy alleges that InterCloud, acting through Caudill and Cornett, made three false statements: (1) InterCloud would "undertak[e] an [IPO]," (2) the IPO would take place "during the first quarter of 2013," and (3) Muncy "would realize a substantial profit."  (Doc. # 11 at ¶ 13).  He further contends that InterCloud omitted the following material facts: (1) there was no initial public offering imminent, (2) InterCloud was a "shell company" with no legitimate business operations, (3) InterCloud was dependent on securities fraud for any increase in its stock price, (4) there was no ready market in which to trade the shares, and (5) the shares were not registered in Kentucky and could not be sold to him.  (*Id.* at ¶ 16).

### a.    Material misrepresentation or omission

Any misstatement or omission must be material.  *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 571 (6th Cir. 2008).  "Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988).  "Misrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.' " *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997) (quoting *Basic, Inc.*,

14

485 U.S. at 232).

> **i.    Caudill and Cornett's statement that InterCloud would undertake an IPO**

When an alleged misrepresentation concerns historical facts, it is considered "hard information" and is actionable if the plaintiff shows that it is objectively false or misleading and material.  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 470.  Muncy avers that Caudill and Cornett's statement that InterCloud would undertake an IPO during the first quarter of 2013 was false because InterCloud was "already a public company, traded on the Over the Counter Market."  (Doc. # 11 at ¶ 14).

At the time of the meeting, InterCloud was listed on the OTC Bulletin Board (OTCBB), which is described as "an electronic quotation system that displays real-time quotes."  (InterCloud's 2011 Form 10-K; Doc. # 20, Ex. C at 15).  Muncy argues in his response that this makes Caudill and Cornett's statement false because they promised InterCloud "would issue its  . . . first offering ever."  (Doc. # 23 at 18).  But that is not what Muncy pleads in his complaint, where he alleges that he was told "the company would be undertaking an [IPO]."  (Doc. # 11 at ¶ 13).  The difference is significant because the PSLRA requires that a plaintiff "specify" in "the complaint" those statements that are allegedly fraudulent.  15 U.S.C. § 78u-4(b)(1).  The Court will therefore focus on what Muncy pleads in his complaint.

Contrary to Muncy's argument, Caudill and Cornett's statement about the impending IPO was not false.  InterCloud's Form S-1 Registration Statement and a 2013 Form 10-Q confirm what Caudill and Cornett stated would happen: InterCloud underwent an IPO on the NASDAQ in 2013.  (Doc. # 20, Ex. E at 32) ("On October 30, 2013, our registration

15

statement on Form S-I was declared effective by the Securities and Exchange Commission for our *initial public offering* pursuant to which we sold an aggregate of 1,250,000 shares of our common stock . . . .").  Although the statement was not false, because Caudill and Cornett did not inform Muncy that InterCloud was already listed on the OTCBB, a reasonable jury could find that the statement was misleading.  *See In re Omnicare, Inc. Securities Litigation*, 769 F. 3d at 480 (stating that the reasonable jury standard applies at this step).

However, due to publically available information, the statement was not material. Unlike InterCloud's 2012 Form 10-K, its 2011 Form 10-K  was available on the SEC's EDGAR system[6] six months prior to Muncy's meeting with Caudill and Cornett.  In that document, InterCloud clearly and unambiguously disclosed what Muncy alleges was misleading, whether InterCloud was making its "first offering ever."  InterCloud's 2011 10-K Form states: "Our common stock is quoted on the OTC bulletin board (OTCBB) . . . [it is] not listed on . . . a national securities exchange."  (Doc. # 20, Ex. C at 15).  Furthermore, it informs investors, "the tradability of our common stock is limited under the penny stock regulations which may cause the holders of our common stock difficulty should they wish to sell the shares." *Id.*  Because Caudill and Cornett's statement did not *"*significantly alter[] the total mix of information made available," it is not material.  *In re Sofamor Danek Group,*

---

[6] EDGAR stands for Electronic Date Gathering, Analysis, and Retrival.  The SEC's website gives the following description:

All companies, foreign and domestic, are required to file registration statements, periodic reports, and other forms electronically through EDGAR. Anyone can access and download this information for free. Here you'll find links to a complete list of filings available through EDGAR and instructions for searching the EDGAR database.

http://www.sec.gov/edgar.shtml#.VP4MvaPD-ih.

*Inc.*, 123 F.3d at 400 (quoting *Basic, Inc.*, 485 U.S. at 232).

Muncy cites *United Paperworkers International Union v. International Paper Co.*, 985 F.2d 1190 (2d Cir. 1993), in arguing that he is not charged with knowledge of InterCloud's Form 10-K.  (Doc. # 23 at 13).  However, the holding of that case has been largely abolished because it predated mandatory filing on EDGAR and the corresponding availability of SEC documents on the internet.  *United Food and Commercial Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, No. 13-6165,  __F.3d__, 2014 WL 6725435, at *8 (10th Cir. 2014); *In re Keyspan Corp. Sec. Litig.*, 383 F.Supp.2d 358, 374 n.6 (E.D.N.Y. 2003) ("[I]n today's world it is unrealistic to argue that documents available on the SEC website are not readily accessible to the investing public.").  Courts do not hesitate to dismiss securities fraud claims when information a plaintiff suggests was misleading or omitted was actually publicly disclosed.  *See White v. Melton*, 757 F.Supp. 267, 272 (S.D.N.Y.1991) ("The Court must dismiss a complaint founded on allegations of securities fraud if the allegedly omitted or misrepresented information was in fact appropriately disclosed.").[7]

> ii.    **Caudill and Cornett's statements that the IPO would take place in the first quarter of 2013 and that Muncy would realize a substantial profit**

Two statements Muncy alleges are actionable concern predictive information.

---

[7]  *Sailors v. Northern States Power Co.*, 4 F.3d 610, 612 (8th Cir. 1993) (affirming summary judgment against plaintiff where "[m]uch of what the plaintiff argues was hidden from public view is actually part of the regulatory process and upon reasonable inquiry was available to the public"); *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1323 (7th Cir.1988) ("The securities laws require the disclosure of information that is not otherwise in the public domain."); *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir.1978) ("[W]here information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose.")

Specifically, he takes issue with Caudill and Cornett's indication that the IPO would take place in the first quarter of 2013 (it took place in October 2013), as well as their promise that he would make a substantial profit.  When a misrepresentation concerns "predictions and matters of opinion," such statements are considered "soft," and to be actionable the plaintiff must *plead facts* showing that the defendant made the statement with "knowledge of its falsity."  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 470.

Muncy's argument about the IPO's timing is not actionable because he does not plead facts indicating that Caudill, Cornett, or InterCloud knew the statement was false.  The first time he raises the argument is in his response to InterCloud's motion to dismiss – and even there he fails to support his allegation with a single fact.  (Doc. # 23 at 18).  In order for a court to analyze whether a defendant had knowledge that a statement was false, a plaintiff "will need to allege particular facts demonstrating that defendants had actual knowledge that their statements concerning soft information were false or misleading at the time that they were made."  *In re Omnicare, Inc. Securities Litigation*, 769 F.3d at 471.  Muncy having failed to do so, the statement concerning the timing of the IPO is not actionable under § 10(b).

Next, Caudill and Cornett's prediction that Muncy would make a "substantial profit" is not actionable because it is not material.  "'Immaterial statements include vague, soft, puffing statements or obvious hyperbole' upon which a reasonable investor would not rely." *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004)  (quoting *In re K–tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002)).  Unless backed by a guarantee or linked to a misleading statement, predictions of profit and growth are generally not actionable under § 10(b).  *Stavroff v.* Meyo, 129 F.3d 1265, at *4 (6th Cir. 1997); *Parnes v. Gateway*

*2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997); *Laser v. New York State Elec. & Gas Co.*, 85 F.3d 55, 59 (2d Cir. 1996). Muncy does not allege that Caudill and Cornett "guaranteed" a substantial profit, and as discussed above, the statement that InterCloud would undergo an IPO was not materially misleading. Because "no reasonable investor" would rely on such optimism and puffery, InterCloud's substantial profit prediction is not material.

Muncy argues that the statement is actionable because Caudill and Cornett did not "believe the opinions" about the IPO and because their statements "falsified past and present facts." (Doc. # 23 at 19 (citing *Morris Aviation, LLC v. Diamond Aircraft Industries, Inc.*, 536 F. App'x 558, 563 (6th Cir. 2013) (stating that predictions can form the basis for fraud when "the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham"))). This argument fails because, as discussed *supra*, Caudill and Cornett's statement that there was an impending IPO was true, meaning their prediction of a substantial profit was not an obvious sham. The "narrow circumstances" outlined in *Morris Aviation* therefore do not apply. 536 F. App'x at 563.

### iii.    Omissions

Muncy avers that InterCloud omitted material facts by not advising him of the following: (1) there was no initial public offering imminent, (2) InterCloud was a "shell company" with no legitimate business operations, (3) InterCloud was dependent on securities fraud for any increase in its stock price, (4) there was no ready market in which to trade the shares, and (5) the shares were not registered in Kentucky and could not be sold to him. (*Id.* at ¶ 16). "A duty to affirmatively disclose 'may arise when there is insider trading, a statute requiring disclosure,' or . . . 'an inaccurate, incomplete[,] or misleading

19

prior disclosure.'" *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (quoting *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n. 10 (3d Cir.2004)).

The first three alleged omissions do not merit much discussion.  First, as discussed *supra*, there was an IPO imminent.  Second, InterCloud had no duty to disclose either that it is a "shell company" or that it is dependent on securities fraud for an increase in its stock price.  Such disclosures do not constitute historical information, facts, or predictions; rather, they are accusations Muncy has lodged in his complaint.  Further, Muncy does not allege that Caudill and Cornett made any representations about InterCloud's business structure or financial condition that would require additional disclosure.  Such information was, meanwhile, publically available on EDGAR.  Because there was no duty to disclose the first three omissions, they are not actionable under § 10(b).

Omissions four and five can be combined into one: the shares were not registered and Muncy would not be able to trade them.  Caudill and Cornett did have a duty to disclose this material information because it concerned existing facts and there is no indication that the information was publically available.  A reasonable investor certainly would consider this information important, as it implicates him in an illegal stock purchase and impacts his ability to trade the shares in the future.  The Court will now turn to whether this omission, as well as any of the above statements and omissions,[8] can be attributed to

---

[8]  The Court stands by its conclusion that the other statements and omissions are not actionable because they are either not misleading, not material, or there was no duty to disclose them.  However, in the alternative, the Court will analyze whether any of the comments can be attributed to InterCloud.  The Court does so because the Sixth Circuit has recently warned: "In general, the federal judiciary has a limited understanding of investor behavior and the actual economic consequences of certain statements. Thus, we must tread lightly at the

InterCloud.

### b. Muncy has not plead facts giving rise to a strong inference that InterCloud acted with scienter

A § 10(b) plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The required state of mind is scienter, which is a "mental state embracing intent to deceive, manipulate or defraud" and requires a showing of at least recklessness. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 472 (quotations and citations omitted). Recklessness is defined as a mental state beyond negligence that amounts to "highly unreasonable conduct which is an extreme departure from the standards of ordinary care" and is "akin to conscious disregard." *In re Comshare, Inc. Sec. Litig.*, 183 F.3d at 550 (quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).

In determining whether Muncy could prove apparent authority, the Court accepted his factual allegations as true, did not weigh opposing inferences, and determined whether a showing of apparent authority was plausible. Here, however, Muncy's burden is much higher: the inference of scienter "must be more than merely 'reasonable' or 'permissible' – it must be cogent . . . and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issue & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Courts must undertake three steps to determine whether a plaintiff has made a strong showing of scienter: First, as with any Rule 12(b)(6) motion to dismiss, accept all factual allegations as true. *Id.* at 322. Second, consider the entire complaint, and all other

---

motion-to-dismiss stage, engaging carefully with the facts of a given case and considering them in their full context." *In re Omnicare, Inc. Securities Litigation*, 769 F.3d at 472.

matters of which a court may take judicial notice, to determine if collectively the facts give rise to a strong inference of scienter.  *Id.* at 323.  Third, "take into account plausible opposing inferences" by considering "nonculpable explanations for the defendant's conduct."  *Id.* at 323-24.

Taken collectively, the facts in the complaint and the relevant SEC documents fail to give rise to a strong inference that InterCloud acted recklessly to defraud.  Muncy suggests that InterCloud sent Caudill and Cornett to Kentucky to misrepresent the IPO so that Muncy would pay more for the stock than it was worth.  (Doc. # 23 at 16, 19).  But alleging that InterCloud wanted to increase its profits does little to establish scienter because "if a well-pleaded complaint can allege only that a corporation intended to defraud based on a desire to continue earning money . . . then the heightened pleading standard for scienter has no bite."  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 484.

In further support, Muncy points to the business cards and subscription agreement Caudill and Cornett handed him, as well as the stock certificate that Muncy alleges InterCloud mailed to his home.  (Doc. # 11 at ¶¶ 12, 17, 21, Exs. A-C).  These facts were sufficient to establish apparent authority and personal jurisdiction because the Court did not consider opposing inferences.  Here, however, it must.  Caudill's and Cornett's possession of the business cards and subscription agreement does not lead to a strong inference that InterCloud acted recklessly – Caudill and Cornett would have had access to them merely as a result of their positions with the company.  The mailing of the stock certificate, meanwhile, has little probative value in establishing InterCloud's state of mind; specifically, whether anyone at InterCloud had knowledge of, or influence over, Caudill and Cornett's conversation with Muncy, or whether anyone at InterCloud consciously

22

disregarded a known risk that the sale to Muncy would take place.  Muncy does not plead to whom he made the $50,000 payment, or that he communicated with anyone at InterCloud other than Caudill and Cornett.

Based on the totality of the facts in the complaint, there is not a strong inference that InterCloud would have terminated its president, and then a month later sent him, along with a vice president from a subsidiary, on a mission to sell unregistered securities and to misrepresent the timing and nature of an impending IPO.[9]  Public records indicate that before the meeting Caudill owned over 43,000,000 shares of InterCloud stock. (InterCloud's 2011 Form 10-K, Doc. # 20, Ex. C at 50).  InterCloud having publically declared that it was traded on the over-the-counter market and having recently fired Caudill, the stronger inference is that Caudill and Cornett were acting on their own and were selling Caudill's personal shares.  *See In re Omnicare, Inc.*, 769 F.3d at 483 (holding that a former employee's knowledge could not be imputed to a company because "he left the company" before the false statement was made).  Muncy's failure to make a strong showing of scienter requires that the Court dismiss his § 10(b) and Ky. Rev. Stat. § 292.320 claims against InterCloud.

**E.     Ky. Rev. Stat. §§ 292.330, 292.340, 292.480**

Muncy also brings claims against InterCloud under Ky. Rev. Stat. §§ 292.330, 292.340, 292.480.  InterCloud does not raise specific arguments as to why these three

---

[9]  In *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001), the Sixth Circuit identified nine non-exhaustive factors, "the more of [which] are present, the stronger the inference" of scienter.  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 473.  The Court will not address these factors because the parties did not brief them and because it does not find them particularly relevant to the facts of this case – which in and of itself weighs against a finding of scienter.

claims should be dismissed, other than to say "all of Muncy's claims . . . fail Rule 12(b)(6)'s 'plausibility' requirement." (Doc. # 20 at 2). Based on the Court's apparent authority ruling, and because Rule 9(b) and the PSLRA do not apply, the Court will deny InterCloud's motion to dismiss these claims.

Ky. Rev. Stat. § 292.330(3) makes it unlawful "to transact business in this state as an agent unless the individual is registered . . . as an agent or is exempt." *See Myers v. OTR Media, Inc.*, No. 1:05-CV-101, 2008 WL 695357, at *2 (W.D. Ky. Mar. 12, 2008). The statute's plain text does not suggest that fraud is an element. Muncy alleges that Caudill and Cornett sold him stock and were not registered agents, which the Court accepts as true. (Doc. # 11 at ¶ 34). InterCloud raises no argument in dispute. Because InterCloud is potentially liable for Caudill and Cornett's actions under apparent authority, InterCloud's motion to dismiss this claim is denied.

Under Ky. Rev. Stat. § 292.340, "[i]t is unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security." Like with § 292.330, there is no requirement that the individual act with fraud. Muncy alleges that when he bought the stock it was not registered and there was no exemption. (Doc. # 11 at ¶ 21). InterCloud does not dispute this fact, which is its burden. *Wilson v. Southward Inc. Co. No. 1*, 675 S.W.2d 10, 13 (Ky. Ct. App. 1985) (holding that the "sellers have the burden of proving that an exemption from registration requirements was duly applicable at the time of the sale of the security instruments."). Under an apparent authority theory, InterCloud's motion to dismiss this claim is denied.

Ky. Rev. Stat. § 292.480 requires proof of three elements: "(1) offer or sale of a security; (2) by means of an untrue statement or omission concerning a material fact; (3) that the seller knew or should have known was untrue or misleading." *Republic Bank & Trust Co.*, 683 F.3d at 262.  Rule 9(b) and the PSLRA do not apply to § 292.480.  *Booth v. Verity*, 124 F.Supp.2d 452, 463 (W.D. Ky. 2000).  The Court found *supra* that Caudill and Cornett made a material omission that they should have known was misleading when they failed to inform Muncy that the shares were not registered.  Based on apparent authority, InterCloud's motion to dismiss this claim is denied.

## F.    Fraud

Muncy's single fraud claim actually "comprises two distinct causes of action: fraud by misrepresentation and fraud by omission." *Republic Bank & Trust Co.,* 683 F.3d at 248.  In support, he points to the same statements and alleged omissions discussed in the securities fraud analysis.  (Doc. # 11 ¶¶ 40-45).

### 1.    Fraud by misrepresentation

Fraud by misrepresentation comprises six elements: "(1) the defendant must have made a material misrepresentation; (2) that was false; (3) that the defendant knew was false, or made with reckless disregard for its truth; (4) that was intended to induce the plaintiff to act, based on the misrepresentation; (5) that the plaintiff reasonably relied; and (6) that caused the plaintiff injury." *Republic Bank & Trust Co.,* 683 F.3d at 248 (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky.2009)).  Similar to securities fraud, a "misrepresentation ... must relate to a past or present material fact.  A mere statement of opinion or prediction may not be the basis of an action . . . [n]or [may] sales talk or puffing . . . [especially] where the parties deal at arm's length and have equal means of

25

communication." *Id.* (quotations and citations omitted).

For reasons discussed *supra*, Muncy has not identified a fraudulent statement. The statement about the IPO was not false and was not material based on publically available information. There are no facts in the complaint that suggest Caudill and Cornett knew their statement about the IPO's timing was false or that they made the prediction recklessly. Finally, the statement about a substantial profit is not actionable because it constitutes mere puffery and sales talk. InterCloud's motion to dismiss Muncy's fraud by misrepresentation claim is granted.

### 2.    Fraudulent omission

To succeed on a fraudulent omission claim, a plaintiff must show "(1) a duty to disclose the material fact at issue, (2) failure to disclose, (3) reliance, and (4) damages." *Morris Aviation,* 536 Fed. App'x at 568 (citing *Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729, 747 (Ky. 2011)). There are four situations that create a duty to disclose: "(1) fiduciary relationship; (2) statutory requirement; (3) 'when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure'; and (4) 'where one party to a contract has superior knowledge and is relied upon to disclose same.'" *Id.* (quoting *Giddings*, 348 S.W.3d at 747-48).

Muncy alleges a fact that Caudill and Cornett failed to disclose: the shares were not registered and there was no exemption. Kentucky's decision to make the sale of unregistered and nonexempt securities illegal evidences that this is a material fact. Caudill and Cornett had a duty to disclose because they were the selling party and were the only ones at the meeting with knowledge that the shares were not registered. *See Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) (holding that a car dealer

26

had a duty to disclose to a buyer that a vehicle had a history of repairs because the dealer had "superior knowledge").  Under an apparent agency theory, InterCloud is potentially liable for Caudill and Cornett's failure to disclose. Unlike with the securities fraud claims, Muncy does not have to plead a strong inference of scienter.  Accordingly, InterCloud's motion to dismiss the fraudulent omission claim is denied.

**G.    Negligent misrepresentation**

Negligent misrepresentation provides that:

[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Giddings & Lewis, Inc.*, 348 S.W.3d at 744-45 (citing Restatement (Second) of Torts (1977)).  "A prima facie case of . . . negligent misrepresentation requires an affirmative false statement.  Mere omissions will not do."  *Republic Bank & Trust Co.*, 683 F.3d at 260 (quoting *Giddings & Lewis Inc.*, 348 S.W.3d at 746).  Further, the false statement must be material.  *Giddings & Lewis Inc.*, 348 S.W.3d at 746 (citing Restatement (Third) of Torts § 9 (requiring a "misrepresentation of material fact concerning the product")); *Aesthetics in Jewelry, Inc. v. Brown, ex rel. coexecutors*, 339 S.W.3d 489, 495 (Ky. Ct. App. 2011) (stating that negligent misrepresentation "requires proof by clear and convincing evidence of a material representation").

The Court concluded *supra* that Caudill and Cornett did not make an affirmatively false or materially misleading statement in discussing the impending IPO.  The Court further held that Caudill and Cornett's predictions about future profits were mere puffery

27

and salesmanship.  Finally, any omissions raised in the complaint are not actionable as a
negligent misrepresentation.  Therefore, this claim is dismissed.

## H.    Unjust enrichment

A plaintiff must prove three elements to prevail on an unjust enrichment claim: "(1)
[a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of
benefit by defendant; and (3) inequitable retention of benefit without payment for its value."
*Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (citing *Guarantee Elec. Co. v. Big
Rivers Elec. Corp.*, 669 F.Supp. 1371, 1380–81 (W.D. Ky.1987)).  To succeed on an unjust
enrichment claim, "the plaintiff must allege that it conferred a benefit on the defendant."
*Dixie Fuel Co., LLC v. Straight Creek, LLC*, No. 08–326–GFVT, 2011 WL 845828, at *4
(E.D. Ky. Mar. 8, 2011) (collecting cases).

Muncy does not plead to whom he made the stock payment; in other words, he does
not allege that he bestowed a direct benefit on InterCloud.  However, he argues in his
response that his stock purchase benefitted InterCloud by "propp[ing] up the [stock] price,"
which in turn benefitted InterCloud's agents whose "stock would otherwise be worthless."
(Doc. # 23 at 20).  It does appear that under Kentucky law, the benefit the plaintiff confers
can be either direct or indirect.  *Seye v. Community Yellow Cab*,  No. 10-234-WOB-CJS,
2013 WL 1332430, at *12 (E.D. Ky. Feb. 25, 2013) (citing *Dixie Fuel Co., LLC*, 2011 WL
845828, at *4).  However, Muncy's theory here does not rise above the speculative.  It is
not plausible that Muncy would be able to present facts that his one-time stock purchase
indirectly increased InterCloud's stock price *and* that InterCloud retained this benefit,
certainly not in a manner that would result in an ascertainable figure.  This claim is
therefore dismissed.

I.     **Civil conspiracy**

To prevail on a civil-conspiracy claim, a plaintiff must prove "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky.1995)).   Civil conspiracy is not a free-standing claim in Kentucky, but "merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458–59 (6th Cir. 2013).   Civil conspiracy claims have a one-year statute of limitations.   Ky. Rev. Stat. 413.140(1)©; *Montgomery*, 910 S.W.2d at 239.

The meeting and stock purchase took place in October 2012; Muncy filed his complaint in February 2014.   Nevertheless, Muncy maintains that his civil conspiracy claim is not time-barred because "defendants continued their securities fraud scheme into 2013, when they caused persons posing as independent analysts to tout the stock."  (Doc.  # 11 at ¶ 22).  Such a claim sounds in fraud, which requires that Muncy identify the speaker and plead when and where the statements were made.  Fed. R. Civ. P. 9(b).  Muncy has satisfied none of these requirements, making his allegations about InterCloud's actions in 2013 insufficient to support a fraud claim.  Muncy's failure to file his civil conspiracy claim within one-year of an underlying tort requires dismissal.  *Hogan v. Goodrich Corp.*, No. Civ. A. 05–159–C, 2006 WL 149011, at *5 (W.D. Ky. Jan. 17, 2006) (unpublished) ("To support a civil[-]conspiracy claim, some underlying tortious act must be taken.").

### III.      Conclusion

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1.       InterCloud's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction is **DENIED**.

2.       InterCloud's Fed. R. Civ. P. 12(b)(6) motion to dismiss Count I (Federal Securities Fraud), Count IV (Negligent Misrepresentation), Count V (Unjust Enrichment), and Count VI (Civil Conspiracy) is **GRANTED in full** and these claims are therefore **DISMISSED.**

3.       InterCloud's Fed. R. Civ. P. 12(b)(6) motion to dismiss Count II is **granted in part** and **denied in part**: it is **GRANTED** as it relates to Ky. Rev. Stat. § 292.320 and **DENIED** as its relates to Ky. Rev. Stat. §§ 292.330, 292.340, 292.480.  Muncy's claim under Ky. Rev. Stat. § 292.320 in Count II is therefore **DISMISSED.**

4.       InterCloud's Fed. R. Civ. P. 12(b)(6) motion to dismiss Count III is **granted in part** and **denied in part**: it is **GRANTED** as it relates to fraudulent misrepresentation and **DENIED** as it relates to fraudulent omission.  Muncy's fraudulent misrepresentation claim in Count III is therefore **DISMISSED**.

This 10th day of March, 2015.



Signed By:

*David L. Bunning*   DB

United States District Judge

G:\DATA\Opinions\Lexington\14-111 MOO on MTD.wpd