UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 14-111-DLB-REW**

**ROBERT MUNCY**                                                                            **PLAINTIFF**

**v.**                        **MEMORANDUM OPINION AND ORDER**

**INTERCLOUD SYSTEMS, INC.**                                     **DEFENDANT**

\*\*   \*\*   \*\*   \*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendant InterCloud Systems, Inc.'s Motion for Summary Judgment. (Doc. # 75). Plaintiff Muncy having filed his Response (Doc. # 79) and InterCloud having filed its Reply (Doc. # 80), this matter is ripe for review. Having reviewed the parties' briefing, and the Court being otherwise sufficiently advised, InterCloud's Motion for Summary Judgment will be **denied** for the reasons stated herein.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

In October 2012, Plaintiff Robert Muncy, D.M.D., met with former-Defendants[1] Billy Caudill and Russell Cornett at a restaurant in Lexington, Kentucky. (Doc. # 11 at ¶ 12). Caudill is the former President of Genesis Group Holdings, Inc. ("Genesis"), which changed its name to InterCloud Systems, Inc. ("InterCloud") in January 2013. (Doc. # 20, Exs. A, D). InterCloud is a Delaware Corporation that engages in internet data storage and has its principal office in New Jersey. (Doc. # 11 at ¶ 3). Caudill joined Genesis in 2010 when

---

[1] All claims against Caudill and Cornett were dismissed by agreement. (Docs. # 19 and 47).

it acquired Digital Comm, Inc. ("Digital").  (Doc. # 20, Ex. B, p. 1).  At all relevant times, Caudill has served as Digital's Chief Executive Officer and Cornett as Digital's Vice President of Public Relations.  (Doc. # 11 at ¶¶ 5-6).  In September 2012, approximately one month before the meeting in Lexington, Genesis terminated Caudill and sold a majority of its Digital shares.  (Doc. # 20, Exs. A, B).

Muncy knew Caudill and Cornett from high school, but had not seen them since graduation.  (Doc. # 75 at Ex. A).  In October 2012, he ran into them at a Lexington restaurant.  *Id.*  During that meeting, Caudill and Cornett informed Muncy of their positions at Digital.  (Doc. # 11 at ¶ 12).  They provided Muncy with business cards that corroborated their titles and listed Digital as a "Genesis Group Holdings Company."  *Id.*  According to Muncy, Caudill and Cornett represented that they were authorized to speak on Genesis's behalf.  *Id.*  They told Muncy that they were giving him an opportunity to invest in Genesis before it undertook an initial public offering ("IPO") in 2013 and that Muncy would "realize a substantial profit."  *Id.* at ¶ 13.

On October 24, 2012, Muncy signed a Subscription Agreement and Confidential Investor Questionnaire.  *Id.*  The agreement was also signed by Caudill, and stated that it was accepted by Digital, "a division of Genesis."  *Id.* at ¶ 18.  The original date on the agreement, "2011," was crossed-out and "2012" was written by hand.  *Id.* at Ex. B.  Muncy purchased 500,000 shares of Genesis stock at 10¢ per share. *Id.* at ¶ 17.  A few days later, Muncy met Caudill and Cornett at the Bluegrass Field Airport with a $50,000 check, which he made out to Caudill, personally.  (Doc. # 75 at Ex. D).  Genesis mailed a stock certificate to Muncy's home in Lexington, KY, which evidenced his ownership of 500,000 shares of Genesis stock.  (Doc. # 11 at ¶ 20).  It appears from the evidence that the shares Muncy

purchased had belonged to Caudill's wife, and that the transaction was handled by Corporate Stock Transfer, Inc., InterCloud's transfer agent. (Doc. # 75-1, Ex. G, H, & I). In October 2013, after Genesis changed its name to InterCloud, it underwent an IPO on the NASDAQ. (Doc. # 20 at Ex. E).

Muncy contends that Caudill and Cornett's statements were false, and that they omitted material facts necessary to keep their statements from being misleading. (Doc. # 11 at ¶¶ 14, 16). First, Muncy contends that Caudill and Cornett's statements regarding the IPO were misleading, because InterCloud was already a publicly-traded company on the Over the Counter Market. (Doc. # 79, p. 6). Second, Muncy claims that Caudill and Cornett made a material omission by failing to disclose the fact that the shares they were selling were not registered with the Commonwealth of Kentucky. *Id.* Muncy claims that because the shares are not registered, he has been unable to sell them and has effectively lost all of the money he invested. *Id.*

Following these revelations, Muncy attempted to have InterCloud rescind his stock purchase to no avail. (Doc. # 11 at ¶ 24). He brought suit against InterCloud alleging violations of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Kentucky's Blue Sky Laws, KRS §§ 292.320, 292.330, 292.340, and 292.480. (Doc. # 11). Additionally, he asserted state law claims for fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy. *Id.* InterCloud moved to dismiss Muncy's complaint for failure to state a claim and lack of personal jurisdiction. (Doc. # 20). This Court denied the motion for lack of personal jurisdiction, granted the motion to dismiss Count I (Federal Securities Fraud), Count IV (Negligent Misrepresentation), Count V (Unjust Enrichment), and Count VI (Civil Conspiracy), granted the motion to dismiss Count II as it relates to KRS

3

§ 292.320, and denied the motion to dismiss Count II as it relates to KRS §§ 292.330, 292.340, and 292.480. (Doc. # 30). Therefore, the only claims remaining are those relating to Kentucky's Blue Sky Laws. Specifically, Plaintiff's claims under KRS §§ 292.330,[2] 292.340,[3] and 292.480[4] are currently before the Court. InterCloud has moved for summary judgment on the remaining claims. (Doc. # 75). That motion is ripe for review.

## II. ANALYSIS

### A. Applicable Law

Federal courts sitting in diversity apply federal procedural law. *Hanna v .Plumer*, 380 U.S. 460, 465 (1965). The substantive law of the forum state governs the claims asserted. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moore v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Accordingly, the Court will evaluate the instant Motion in accordance with the Federal Rules of Civil Procedure and apply Kentucky law to Muncy's claims.

### B. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[2] KRS § 292.330 makes it unlawful to transact business in Kentucky as an agent unless the individual is registered as an agent or is otherwise exempt.

[3] KRS § 292.340 makes it unlawful for any person to offer or sell any security in Kentucky unless the security is registered, or the security or transaction is exempt, or the security is a covered security.

[4] Under KRS § 292.480, any person who offers or sells a security in violation of KRS Chapter 292, or sells a security by means of an untrue statement or omission of a material fact, is liable to the person buying the security from him.

4

56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

### C. Muncy's Claims

Muncy's claims against InterCloud are viable under a theory of apparent authority. (Doc. # 30). The first claim arises under KRS § 292.330(3), which makes it unlawful "to transact business in this state as an agent unless the individual is registered ... as an agent or is exempt." *See Myers v. OTR Media, Inc.*, No. 1:05–CV–101, 2008 WL 695357, at *2 (W.D. Ky. Mar. 12, 2008). Muncy alleges that Caudill and Cornett sold him stock and were not registered agents. The second remaining claim is under KRS § 292.340, which makes it "unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security." Muncy alleges that when he bought the stock it was not registered and there was no exemption. (Doc. # 11 at ¶ 21). The final claim relates to KRS § 292.480, which requires proof of three elements: "(1) offer or sale of a security; (2) by means of an untrue statement or omission concerning a material fact; (3) that the seller

5

knew or should have known was untrue or misleading." *Republic Bank & Trust Co.*, 683 F.3d at 262. The Court found in its prior Order that Caudill and Cornett made a material omission that they should have known was misleading when they failed to inform Muncy that the shares were not registered. (Doc. # 30). For each of these claims, InterCloud is potentially liable for Caudill and Cornett's actions under the theory of apparent authority.

**D. Apparent Authority**

The common-law theory of agency allows a principal to be held liable for the acts of his agent when the agent is acting on his behalf. *See* Restatement (Third) of Agency § 2.01. A principal may be bound when the agent is acting under actual or apparent authority. Actual authority is created when a principal expressly grants the agent authority to act on its behalf. *See Kindred Nursing Centers Ltd. Partnership v. Brown*, 411 S.W.3d 242, 249 (Ky. Ct. App. 2011).

Apparent authority, on the other hand, is not created by an express grant of authority. An apparent agent "is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934). There is no requirement that the principal have direct contact with the party asserting apparent authority. *Dierg v. Lees Leisure Industries, Ltd.*, No. 11-125-DLB-JGW, 2012 WL 669968, at *6 (E.D. Ky. Feb. 28, 2012) (citing *Papa John's Int'l, Inc. V. McCoy*, 244 S.W.3d 44, 58 (Ky. 2008) (Lambert, C.J., dissenting)).

The Kentucky Supreme Court has defined apparent authority as follows:

> Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.

6

*Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 499 (Ky. 2014) (citing Restatement (Third) of Agency § 3.03 (2006)).

Accordingly, apparent authority is established where (1) the principal represents that the agents have the authority to act on its behalf; (2) the third party reasonably believes the agents have such authority; and (3) the third party's belief is traceable to the principal's representations. *Id.* at 500. While "apparent authority is a legal conclusion, its elements are chiefly factual matters." *Orchard Group, Inc. v. Konica Med. Copr.*, 135 F.3d 421, 426 n. 1 (6th Cir. 1998).

### 1. Representation by the principal

When apparent authority is at issue, the court must look not to the purported *agent's* manifestations, but to the *principal's* manifestations that the purported agent had authority to act on his behalf. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012). Muncy argues that InterCloud issued business cards to Caudill and Cornett, thereby creating the appearance that they were authorized to act on InterCloud's behalf. Muncy has not alleged that InterCloud made any representations of authority aside from issuing the business cards and Subscription Agreement.[5] (Doc. # 11). Thus, the question is whether InterCloud, by issuing those documents, represented that Caudill and Cornett had authority to act on its behalf.

---

[5] In his response to InterCloud's Motion for Summary Judgment, Muncy asserts that InterCloud manifested its apparent grant of authority to Caudill through actions taken after the transaction at issue. (Doc. # 79). Correspondences sent after Muncy purchased the stock, however, are not relevant to the inquiry surrounding Caudill and Cornett's apparent authority at the time of the transaction. *See Dean*, 434 S.W.3d at 500, n. 12; *U.S. v. Kimber*, 395 F. App'x 237, 245 (6th Cir. 2010). Therefore, InterCloud's actions following the transaction will not be considered.

### a. A question of fact exists as to whether InterCloud issued the business cards

InterCloud claims that it did not issue the business cards used by Caudill and Cornett. (Doc. # 75-1, p. 16). In support, it offers testimony from Lawrence Sands, Vice President of Genesis/InterCloud, in which he claims that he does not recall InterCloud issuing the business cards, and that the company would not have played a role in approving the cards if Caudill made them on his own. *Id.* at Ex. G. Sands also contends that any business cards issued by InterCloud would not have borne the logo of Digital, a wholly-owned subsidiary of InterCloud. *Id.* While Sands's testimony should be considered, it is not dispositive where all inferences must be drawn in Muncy's favor.

A jury weighing Muncy's assertion that InterCloud issued the cards against Sands's inconclusive testimony could reasonably find that Caudill obtained the cards from Genesis during the course of his employment. It is undisputed that Caudill served as President of Genesis (now InterCloud) prior to September 2012. And while Cornett never worked for InterCloud directly, it is also conceivable that InterCloud could have issued business cards for an employee of its subsidiary. Thus, the question of whether InterCloud issued the business cards to Caudill and Cornett is in dispute.

Muncy also claims that InterCloud issued the Subscription Agreement bearing Genesis's name, which created the appearance of agency. (Doc. # 79, p. 12). Again, InterCloud offers testimony from Sands, in which he asserts that an agreement issued by InterCloud would not have borne the Digital logo (Doc. # 80, p. 11). Sands also points to the handwritten alteration to the date as evidence that InterCloud did not issue the agreement. *Id.* As was the case with the business cards, this testimony is not conclusive.

Thus, a question of fact exists as to the issuance of the business cards and the origin of the Subscription Agreement.

### b. Issuance of the business cards is a material fact

Next, InterCloud argues that even if it did issue the business cards to Caudill and Cornett, that fact is not material because it is insufficient to establish apparent authority. InterCloud offers a number of cases from other jurisdictions to support its argument that the presence of business cards alone does not create the appearance of authority. *See, e.g.*, *Asplund v. Selected Investments in Financial Equities, Inc.*, 86 Cal.App.4th 26 (Cal. Ct. App. 2000) (holding that the issuance of a business card was insufficient to create apparent authority); *Cowburn v. Leventis*, 366 S.C. 20 (S.C. Ct. App. 2005) (same); *CSX Transp., Inc. v. Recovery Express, Inc.*, 415 F.Supp.2d 6 (D. Mass. 2006) (holding email domain names were insufficient, on their own, to establish apparent authority).

However, other courts have found that business cards *can* be indicative of an agency relationship. *See Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581 (6th Cir. 2012) (applying Michigan law to find that where an agent passed out business cards of the principal reasonable minds could differ on agency relationship); *Grinnell v. Carbide & Carbon Chems. Corp.*, 276 N.W. 535, 541 (Mich. 1937) (relying on business cards as one of the elements to establish an agency relationship); *Randall v. J.A. Fay & Egan Co.*, 123 N.W. 574, 575 (Mich. 1909) (using letterheads as evidence of agency relationship).

The various conclusions surrounding the presence of business cards and company letterhead illustrate the fact-specific nature of this inquiry. The Restatement (Third) of Agency provides some guidance, explaining that "an agent's possession of the principal's letterhead stationery does not in itself constitute such a manifestation, but may constitute

9

evidence relevant to showing apparent authority." Restatement (Third) of Agency § 3.11, cmt. d. Accordingly, the Court must consider the presence of the business cards together with all other evidence and surrounding circumstances.

The fact that Caudill and Cornett possessed the business cards and Subscription Agreement bearing InterCloud's name could lead a reasonable jury to find that Caudill and Cornett did have authority to act on behalf of InterCloud. Moreover, the business cards Caudill and Cornett possessed corroborated their titles as officers of the company. While an employee's possession of company letterhead alone may be insufficient to establish apparent authority, the possession of documents naming that employee as an *officer* of the company is more likely to create the appearance of authority. *See* Restatement (Third) of Agency 3.03, cmt. e ("The apparent authority of a president or chief executive officer encompasses transactions falling within the ordinary course of the corporation's business").

InterCloud asserts that the apparent authority attributable to an officer of a company could not be attributed to Caudill, because he had been terminated from InterCloud prior to engaging in the transaction with Muncy. Thus, InterCloud contends that if it did make a representation of authority by issuing business cards to Caudill, that authority was terminated along with his employment. Muncy claims that even though Caudill's actual authority ended upon termination, apparent authority remained as long as Caudill possessed the business cards. (Doc. # 79, p. 18). It is true that the termination of actual authority does not terminate apparent authority. *See Herfurth v. Horine*, 98 S.W.2d 21, 24 (Ky. 1936); Restatement (Third) of Agency § 3.11 ("The termination of actual authority does not by itself end any apparent authority held by an agent"). Instead, "apparent authority ends when it is no longer reasonable for the third party ... to believe that the agent

continues to act with actual authority." Restatement (Third) of Agency § 3.11(2). The question of whether or not the termination of Caudill's actual authority also terminated his apparent authority depends on the reasonableness of Muncy's belief.

Accordingly, the presence of the business cards and Subscription Agreement may be a sufficient basis for apparent authority. Therefore, a question of material fact remains as to whether InterCloud represented to Muncy that Caudill and Cornett were its agents.

### 2. Reasonable belief

Reasonableness is usually a question for the finder-of-fact. *Dean*, 434 S.W.3d at 500. Here, the Court cannot conclude as a matter of law whether or not Muncy's belief that Caudill and Cornett were acting under InterCloud's apparent authority was reasonable.

Muncy contends that it was reasonable to believe that Caudill and Cornett's possession of business cards gave them the authority to sell shares of company stock. Although the business cards listed the pair as officers of Digital, an InterCloud subsidiary, the cards did include InterCloud's name. Further, Caudill and Cornett used a Subscription Agreement that listed Digital as a "division of Genesis." (Doc. # 11 at ¶ 18). It could have been reasonable for Muncy to believe that the presence of InterCloud's name on the documents along with the business cards corroborating the duo's positions as officers indicated that Caudill and Cornett were acting on behalf of InterCloud.

InterCloud argues that Muncy's belief was not reasonable, in part because he did not conduct diligent research prior to dealing with Caudill and Cornett. Indeed, courts have cautioned that "the person claiming reliance on an agent's apparent authority must take heed to warnings and inconsistent circumstances." *U.S. Achievement Acad., LLC v. Pitney Bowes, Inc.*, 458 F.Supp.2d 389, 396 (E.D. Ky. 2006); *Savannah Sugar Refinery v. RC*

*Canada Dry Bottling Co.*, 593 S.W.2d 880, 883 (Ky. Ct. App. 1980).

InterCloud asserts that diligent research would have revealed flaws with the investment, such as the fact that InterCloud shares were already being traded on the Over the Counter market. This, however, is irrelevant. The question is not whether Muncy's investment was reasonable, but whether his belief regarding Caudill's authority was reasonable. InterCloud claims that Muncy's belief as to Caudill's authority could also have been remedied with research. But, InterCloud did not file public notice of Caudill's termination until *after* the transaction had occurred. (Doc. # 79 at Ex. C). Thus, Muncy's failure to do research was insubstantial, because it is not likely that research would have revealed that Caudill had been terminated.

Next, InterCloud argues that the handwritten alterations to the Subscription Agreement should have alerted Muncy to the possibility that InterCloud had not authorized Caudill and Cornett's actions. While it may be true that the handwritten alteration may have raised red flags about the transaction, those alarms would not necessarily lead to the conclusion that InterCloud had not approved the document. Ultimately, whether the handwritten date made Muncy's belief unreasonable is a question of fact.

Finally, InterCloud argues that Muncy could not have reasonably believed that Caudill was acting as an agent of InterCloud because Muncy's check was written to Caudill, personally. This fact does weigh in InterCloud's favor. It may have been unreasonable to think that an agent acting on behalf of a company would receive personal payment in exchange for the company's shares of stock. But, again, this fact does not lead to only one possible result.

Facts have been presented to support both InterCloud and Muncy's positions. While there is some evidence that Muncy's belief was not reasonable, the evidence is not so overwhelming as to conclude that no jury could reasonably find otherwise. Thus, summary judgment is not appropriate on this issue.

### 3. Muncy's belief was traceable to InterCloud's representations

It is usually a question of fact whether a third party's belief regarding apparent agency is traceable to a manifestation of the principal. *Pruitt v. Genie Industries, Inc.*, No. 3:10-81-DCR, 2013 WL 485966 at *5 (E.D. Ky. Feb. 6, 2013). Here, it would be reasonable for a jury to find that Muncy's belief was traceable to InterCloud's representations. Muncy contends that InterCloud represented that Caudill and Cornett were its apparent agents by issuing business cards for their use and providing them with the Subscription Agreement. Muncy's belief that Caudill and Cornett were acting with apparent authority from InterCloud was based on the presence of the business cards and Subscription Agreement. Thus, it appears that Muncy's belief was traceable to InterCloud's representations.

### III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendant InterCloud Systems, Inc.'s Motion for Summary Judgment (Doc. # 75) is hereby **DENIED**;

**IT IS FURTHER ORDERED** that **not later than November 22, 2016**, the parties shall file a Joint Status Report setting forth available dates in the Spring, 2017 for a final pretrial conference and trial, and whether the parties would be amenable to mediation before the Magistrate Judge.

This 1st day of November, 2016.



K:\DATA\Opinions\Lexington\14-111 MOO denying MSJ.wpd